**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

CHAMBERS OF
ESTHER SALAS
UNITED STATES DISTRICT JUDGE

MARTIN LUTHER KING
COURTHOUSE
50 WALNUT ST.
ROOM 5076
NEWARK, NJ 07101
973-297-4887

May 22, 2020

**LETTER ORDER**

**Re:** ***Rizza Jane G.A., et al. v. Orlando Rodriguez, et al.***
**Civil Action No. 20-5922 (ES)**

Dear Counsel:

Before the Court is Petitioners' motion for reconsideration of the Court's prior Order construing Petitioners' emergent application (D.E. No. 11) as a motion for a preliminary injunction (*see* D.E. No. 14 at 1 n.2), asking that the Court issue a temporary restraining order ("TRO") enjoining Respondents from (i) transferring Plaintiffs and putative class members to another detention facility or (ii) admitting individuals into immigration confinement at Elizabeth Detention Center ("EDC"). (D.E. No. 21).

A motion for reconsideration brought pursuant to Local Civil Rule 7.1(i) is very limited in scope, *Martinez v. Robinson*, No. 18-1493, 2019 WL 4918115, at *1 (D.N.J. Oct. 4, 2019), and may be granted only when necessary "to correct manifest errors of law or fact or to present newly discovered evidence," *Bootay v. KBR, Inc.*, 437 F. App'x 140, 146–47 (3d Cir. 2011) (citing *Harsco Corp. v. Zlotnicki*, 779 F.2d 906, 909 (3d Cir. 1985)). A reviewing court may grant a motion for reconsideration based on: "(1) an intervening change in controlling law; (2) the availability of new evidence; or (3) the need to correct clear error of law or prevent manifest injustice." *Lazaridis v. Wehmer*, 591 F.3d 666, 669 (3d Cir. 2010).

Here, Petitioners assert that the Court "overlook[ed] relief sought in Petitioner's [*sic*] motion [ECF No. 11], which was one of several voluminous filings Petitioners made and which the Court promptly addressed by the next business day." (D.E. No. 21 at 2). Namely, Petitioners state that along with an order securing their immediate release, they also "seek to restrain [R]espondents from transferring Petitioners and the class out of EDC and transferring or admitting detainees into EDC." (*Id*). The Court disagrees that there was any error or that it overlooked anything, and denies the instant motion. Indeed, implicit in the Court's prior Order construing Petitioners' motion as one seeking a preliminary injunction was the denial of any temporary relief.

As a starting point, the Court agrees with Respondents that this Court lacks subject matter jurisdiction to grant the requested relief. It is well established that Congress has vested the

Secretary of Homeland Security and his/her delegates, such as U.S. Immigration and Customs Enforcement ("ICE"),[1] with the authority to detain aliens pending a decision on their removal proceedings. 8 U.S.C. §§ 1231(a)(2), 1226(a), (c)(1). Moreover, Congress has also vested DHS with the discretion to set the place of detention. 8 U.S.C. § 1231(g)(1) ("The Attorney General shall arrange for appropriate places of detention for aliens detained pending removal or a decision on removal."); *Sinclair v. Attn'y Gen. of the United States*, 198 F. App'x 218, 222 n.3 (3d Cir. 2006) (collecting cases); *Calla-Collado v. Attorney Gen. of U.S.*, 663 F.3d 680, 685 (3d Cir. 2011) ("Thus, as a part of DHS, ICE 'necessarily has the authority to determine the location of detention of an alien in deportation proceedings . . . and therefore, *to transfer aliens from one detention center to another*.'") (quoting *Gandarillas–Zambrana v. Bd. of Immigration Appeals*, 44 F.3d 1251, 1256 (4th Cir. 1995) (emphasis added). Congress has also limited federal district courts' jurisdiction to review decisions or actions made pursuant to the sound discretion of DHS officials under Section 1231(g)(1). *See* 8 U.S.C. § 1252(a)(2)(B)(ii); *Fattah v. Sabol*, No. 08-1325, 2008 WL 2914856, at *1 (M.D. Pa. July 24, 2008) (noting that when Section 1231(g)(1) is read in conjunction with Section 1252(a)(2)(B)(ii), "there is a question as to whether this Court has jurisdiction to review" a discretionary decision made under Section 1231); *see also Van Dinh v. Reno*, 197 F.3d 427, 433 (10th Cir. 1999) (finding that judicial review of decision to transfer a detainee is inappropriate due to lack of jurisdiction).

The exercise of the discretion to transfer detainees has taken on greater importance during the COVID-19 pandemic. *See, e.g.*, *Savino v. Souza*, No. 20-10617, 2020 WL 1703844 at *7 (D. Mass. Apr. 8, 2020) ("Nor does it matter how the density of Detainees is reduced. *Transfer to less crowded facility*, deportation, release on bond, or simply declining to contest lawful residence – any of these methods would effectively minimize the concentration of people in the facility.") (underscore original; italics added). Indeed, as the agency entrusted with overseeing the detention of illegal aliens, ICE is presumably best equipped to determine whether the transfer of detainees from one facility to another is a useful tool to combat the spread of COVID-19 and protect Petitioners. And the CDC has recognized as much through its guidance on the management of COVID-19 in detention facilities. *See* Ctrs. for Disease Control and Prevention, *Interim Guidance on Management of Coronavirus Disease 2019 (COVID-19) in Correctional and Detention Facilities* (hereinafter "*CDC Guidelines*") at 9 (Mar. 23, 2020), https://bit.ly/2WBpbfH.

Yet, Petitioners here ask that this Court not only sidestep the jurisdictional limits imposed by Congress through Section 1252, but to impose its own judgment as to when and how DHS should exercise its statutorily protected discretion to choose the place of detention of detainees. The Court will not do so.

Moreover, even assuming the Court had jurisdiction, it would not grant the requested relief. The standards for both a TRO and preliminary injunction are the same. *Univ. of Texas v. Camenisch*, 451 U.S. 390, 395 (1981). Preliminary injunctive relief is an "extraordinary remedy, which should be granted only in limited circumstances." *Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharm. Co.*, 290 F.3d 578, 586 (3d Cir. 2002). To obtain a

---

[1] As Respondents indicate, the Homeland Security Act of 2002 specifically transferred detention and removal functions to the Department of Homeland Security ("DHS"), and provided that statutory references to the Attorney General or his officers were replaced with references to the applicable DHS official. *See* 6 U.S.C. §§ 251, 557; *Borodachev v. Rodriguez*, No. 13-1999, 2013 WL 1949844, at *4 n.12 (D.N.J. May 8, 2013).

TRO a petitioner must show: (i) a reasonable probability of eventual success on his claims; (ii) that he will be irreparably injured if the relief requested is not granted; (iii) that granting the temporary relief will not result in a greater harm to the non-moving party; and (iv) the public interest favors such relief. *See Reilly v. City of Harrisburg*, 858 F.3d 173, 176 (3d Cir. 2017). Notably, to be entitled to such injunctive relief, a party seeking a TRO "must establish more than a risk of irreparable injury. He must demonstrate 'a clear showing of immediate irreparable injury.'" *Ajjahnon v. U.S. Postal Serv.*, No. 08-4123, 2008 WL 4508327, at *1 (D.N.J. Sept. 30, 2008) (quoting *Hoxworth v. Blinder, Robinson & Co.*, 903 F .2d 186, 205 (3d Cir. 1990)). Particularly, the moving party must demonstrate that the application "is a matter of *emergency* relief." *See Brennan Tree Experts, Inc. v. Well Done Landscaping & Tree Serv., L.L.C.*, No. 12-1263, 2012 WL 12896206, at *1 (D.N.J. Mar. 2, 2012) (emphasis added). Petitioners fail to make such a showing here.

First, Petitioners have not demonstrated that they are likely to face irreparable harm from the transfer of detainees into EDC. Petitioners contend that while CDC requires "a screening at intake for signs and symptoms" for new detainees, ICE merely "directs a verbal screening, basically, several questions concerning recent travel and contact." (*See* D.E. No. 2-10 ¶¶ 13, 22(a)). However, the record here shows that EDC has in fact implemented intake measures pursuant to CDC guidance. (*See* D.E. No. 24-1). Under these measures, all new arrivals at EDC are subject to a medical screening by a nurse, assessed for fever and respiratory illness, asked to confirm if they have had close contact with a person with laboratory-confirmed COVID-19 in the past 14 days, and asked whether they have traveled from or through area(s) with sustained community transmission in the past two weeks. (*Id.* ¶¶ 10–13 & 21–23). Depending on the result of this assessment, EDC officials decide whether the detainee will be monitored or isolated. (*Id.* ¶ 11). Detainees who present symptoms compatible with COVID-19 are placed in isolation, where they are be tested. (*Id.*). If testing is positive, they will remain isolated and treated. (*Id.*). If their condition worsens, they will be referred to a local hospital. (*Id.*). For purposes of the instant motion these measures are sufficiently adequate to diminish any potential risk that new detainees might infect Petitioners with COVID-19. That these measures do not guarantee that Petitioners or putative class members will remain free from disease is irrelevant, for the Constitution does not require such perfection. *See Jorge V. S. v. Green*, No. 20-3675, 2020 WL 1921936, at *1 (D.N.J. Apr. 21, 2020). Accordingly, Petitioners have failed to show the need to enjoin Respondents from transferring detainees into EDC.

Second, Petitioners have also failed to show any risk of harm posed by their transfer to other detention facilities. The CDC Guidelines allow for detainee transfers "for medical evaluation, medical isolation/quarantine, clinical care, extenuating security concerns, or to prevent overcrowding." *CDC Guidelines* at 9. And those are the reasons why ICE continues to permit transfers of detainees during the COVID-19 pandemic. *See* U.S. Immigration and Customs Enforcement, Enforcement and Removal Operations, *COVID-19 Pandemic Response Requirements* at 13 (Apr. 10, 2020), https://www.ice.gov/doclib/coronavirus/eroCOVID19 responseReqsCleanFacilities.pdf. Petitioners have failed to provide any evidence to suggest otherwise.

Despite this, Petitioners contend that detainee transfers from EDC would expose them to COVID-19 because "'[d]etainees are shackled to one another during transports and sit or stand

shoulder to shoulder on benches in the intake area' and are not permitted to socially distance while in transit." (D.E. No. 11-1 at 15 (quoting D.E. No. 2-10 ¶ 22(c)). But as Respondents point out, the declaration of Ms. Schriro, where this allegation arises, cites no evidence for that assertion and provides no basis for how those facts are within the affiant's personal knowledge, or how she personally knows those are the practices today. *See* L. Civ. R. 7.2(a) ("Affidavits declarations, certifications and other documents of the type referenced in 28 U.S.C. §1746 shall be restricted to statements of fact within the personal knowledge of the signatory."); *Falato v. Fotografixusa, L.L.C.*, No. 09-5232, 2013 WL 1846807, at *5 (D.N.J. Apr. 30, 2013) (disregarding argument and facts not within personal knowledge set out in attorney certification).

Moreover, the transfer of Petitioners and the putative class members does not harm their ability to litigate this habeas action. First, this Court would retain jurisdiction over any transferred petitioner, since habeas jurisdiction attaches at the time the petition is filed. *See Rumsfeld v. Padilla*, 542 U.S. 426, 441 (2004) ("[W]hen the Government moves a habeas petitioner after [he] properly files a petition naming [his] immediate custodian, the District Court retains jurisdiction and may direct the writ to any respondent within its jurisdiction who has legal authority to effectuate the prisoner's release."). And though the transfer out of the EDC would likely moot their challenge to the conditions of confinement there,[2] *see Ibarra-Villalva v. USP-Allenwood*, 213 F. App'x 132, 134 (3d Cir. 2007), such transfer would not preclude the Court from proceeding to consider the underlying Petition or the class certification motion, *see Gayle v. Warden Monmouth Cty. Corr. Inst.*, 838 F.3d 297, 307 (3d Cir. 2016). Second, while Petitioners argue that their transfer would harm them by impacting their ability to communicate with class counsel and to otherwise pursue this action (D.E. No. 21 at 2–3), Petitioners have offered no evidence to support the finding that this is in fact true. Nor have Petitioners provided anything to show that the ability to most effectively communicate with class counsel constitutes a valid interest that merits the trampling of the government's discretion over where to detain individuals. To the contrary, the Third Circuit has held that "[a]n alien . . . does not have the right to be detained where he believes his ability to obtain representation and present evidence would be most effective." *Calla-Collado v. Attorney Gen. of U.S.*, 663 F.3d 680, 685 (3d Cir. 2011).

Lastly, Petitioners have provided nothing to show that Respondents have transferred or will imminently transfer any detainee from EDC to another facility. Thus, to the extent such transfers could give rise to an irreparable harm, Petitioners have simply failed to make a clear showing that such a harm is likely or imminent.[3]

---

[2] It is not lost on this Court that Petitioners' requested TRO appears to be facially contradictory to the underlying claims and requested relief. That is, Petitioners complain of the conditions at EDC and request to be released as a result, yet in the same breath seek an order preventing Respondents from moving them out of the allegedly injurious conditions at EDC to another facility, which presumably could cure their alleged injuries.

[3] Petitioners also point to the recent removal of Hector G.M., one of the named Petitioners, as support for the need for a TRO. They assert that "Respondents absconded with Hector G.M. and removed him to another country," and speculate that Respondents did so in retaliation for him joining this matter. (D.E. No. 21 at 2–3). But aside from counsel's bare speculation, Petitioners provide nothing to support such a claim. The Court does not look kindly at counsel making baseless accusations. To be sure, on the record now before the Court it plainly appears that Respondents provided notice of Hector G.M.'s impending removal (D.E. No. 19), and removed him pursuant to a valid order of removal and in accordance with "the public interest in prompt execution of removal orders." *Nken v. Holder*, 556 U.S. 418, 436 (2009). Accordingly, the Court finds the cases cited by Petitioners—which discuss the Court's discretion to limit misleading, confusing, or biased communication with class members—to be irrelevant to

Accordingly, Petitioners' motion is DENIED.[4]

**SO ORDERED.**

*s/Esther Salas*
**Esther Salas, U.S.D.J.**

---

the instant motion. (D.E. No. 21 at 2–3 (citing *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 171 (1989); *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 100 (1981)); *In re Sch. Asbestos Litig.*, 842 F.2d 671, 683 (3d Cir. 1988)).

Moreover, Petitioners' proposed order seeks a TRO enjoining Respondents from "unilaterally transfer[ing Petitioners] and putative class members to *another detention facility*" and "admit[ing] or transfer[ing] individuals into immigration confinement at [EDC]." (D.E. No. 11-2 ¶¶ 2–3 (emphasis added)). Thus, the grant of such an order would not prevent Respondents from exercising their discretion to remove detainees subject to a lawful removal order. And in any event, this Court lacks jurisdiction to stop Respondents from doing so here. *See Torres-Jurado v. Saudino*, No. 18-2115, 2018 WL 2254565, at *2 (D.N.J. May 17, 2018) ("Judges in districts across the country, including this one, have found that [Sections 1252's] jurisdictional bar applies to applications to stay removal.").

[4] Petitioners requested leave to file a reply briefing "why the Court has the authority to grant Petitioners' Motion for Temporary Restraining Order." (D.E. No. 27). Because the Court finds that the TRO fails on the merits even if this Court had jurisdiction to grant the requested relief, Petitioners' request to brief the jurisdictional issue is denied.