**Not for Publication**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

_____

**RIZZA JANE G.A.[1]**, *et al.*, *on behalf of*
*themselves and similarly situated*,

                **Petitioners,**

            **v.**

**ORLANDO RODRIGUEZ**, *et al.*,

            **Respondents.**

_____

**Civil Action No. 20-5922 (ES)**

**OPINION**

SALAS, DISTRICT JUDGE

Before the Court is Petitioners Rizza Jane G.A., Albert A.B., Héctor G.M., Bob L.N., Camilo S.H., and Muhamed I.-S.'s amended petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 (D.E. No. 34 ("Amended Petition")); motion for a preliminary injunction and brief in support of their amended habeas petition (D.E. No. 11 ("P.I.")); and amended motion for class certification pursuant to Federal Rule of Civil Procedure 23 (D.E. No. 36, ("Class Cert.")). Respondents Orlando Rodriguez, John Tsoukaris, Matthew T. Albence, Chad F. Wolf, and William Barr oppose each motion. (D.E. Nos. 43 ("Opp. to Petition and P.I.") & 48 ("Opp. to Class Cert.")). The Court has reviewed the parties' submissions, including Petitioners' replies (D.E. Nos. 53 ("Reply ISO Petition and P.I.") & 60 ("Reply ISO Class Cert.")),[2] and decides this

---

[1]     Consistent with guidance regarding privacy concerns in social security and immigration cases by the Committee on Court Administration and Case Management of the Judicial Conference of the United States, Petitioners are identified herein only by first name and last initial.

[2]     Mount Sinai Human Rights Program; Steering Committee for the New York Lawyers for the Public Interest's Medical Providers Network; White Coats For Black Lives; and individual health care professionals, Dr. Martin Blaser, Dr. Simone Blaser, Dr. Yaniv Fenig, Dr. Kim Strong Griswold, Dr. Laura Krinsky, Dr. Susan Lerner, Dr. Steven

matter without oral argument.  *See* Fed. R. Civ. P. 78(b); L. Civ. R. 78.1(b).  For the reasons that follow, Petitioners' motion for class certification is GRANTED IN PART and DENIED IN PART, and their amended habeas petition and motion for a preliminary injunction are DENIED IN PART without prejudice to the individual Petitioners, who may file separate habeas petitions to advance their due process claims.  The Court will order Petitioners to file supplemental briefing for the remaining class claim—that Respondents are violating the *Accardi* principle.

## I.    Background

Elizabeth Detention Center ("EDC") is an immigration detention facility operated by CoreCivic, Inc., a private company that provides immigration detention services for U.S. Immigration and Customs Enforcement ("ICE").  (D.E. No. 43-5, Declaration of Orlando Rodriguez ("Rodriguez Decl.") ¶ 9).  Petitioners are six individuals who are or were held in immigration detention at EDC.  (Amended Petition ¶¶ 22–27).  Bob L.N. and Muhammad I.-S. are presently detained at EDC pending expedited removal proceedings pursuant to 8 U.S.C. § 1225(b)(2).  (*See* D.E. Nos. 43-16, Form I-213 of Bob L.N., at 3; & 43-20, Form I-213 of Muhammad I.-S., at 3).  Meanwhile, since the filing of this action, at least three of the six individuals have been released from custody:  Rizza Jane G.A. was released two days after an Immigration Judge ("IJ") granted her relief from removal on May 27, 2020 (Opp. to Petition and P.I. at 10); Albert A.B. was released after ICE granted him parole on May 22, 2020 (D.E. No. 43-11, Parole Letter of Albert A.B.); and Héctor G.M. was deported to Mexico on May 19, 2020 (D.E. No. 43-15, Declaration of Hector Mireles, ¶ 4).  The last petitioner, Camilo S.H., was granted bond

---

McDonald, Dr. Stephanie Mischell, and Dr. Aakash Shah (collectively "Amici") have filed a motion for leave to participate as amici curiae in support of Petitioners' motion for a preliminary injunction.  (D.E. No. 51).  Specifically, Amici wish to provide additional information and analysis addressing whether granting preliminary relief in this matter is in the public interest.  (*Id.* at 1–2).  The Court grants Amici leave to participate, and thanks them for their thoughtful contribution.

by an IJ on July 14, 2020 (D.E. No. 65-1, IJ Order for Camilo S.H.), but it is not clear whether he has posted bond and secured his release.

Petitioners seek to certify and represent a class consisting of "all individuals who, between commencement of this action and the entry of final judgment, are or have been held in civil immigration detention at [EDC]." (Class Cert. at 1). They claim that confinement of the class members at EDC, during the ongoing COVID-19 pandemic, violates substantive due process, procedural due process, and the *Accardi* principle. (Amended Petition ¶¶ 137–61). For their due process claims, Petitioners seek their and all putative class members' release or, in the alternative, bond hearings and/or an order directing Respondents to cease any new admissions of immigration detainees to EDC. (*Id.* at 48). For their claim that Respondents are violating the *Accardi* principle, Petitioners seek a declaratory judgment. (*Id.*).

## II.   Jurisdiction

Before proceeding to address class certification, the Court notes that there appears to be a jurisdictional bar on granting classwide injunctive relief under the facts and circumstances of this case. 8 U.S.C. § 1252(f)(1) provides:

> Regardless of the nature of the action or claim or of the identity of the party or parties bringing the action, *no court* (other than the Supreme Court) *shall have jurisdiction or authority to enjoin or restrain the operation of [§§ 1221–1232] . . . , other than with respect to the application of such provisions to an individual alien* against whom proceedings under such part have been initiated.

8 U.S.C. § 1252(f)(1) (emphases added). The first two clauses of § 1252(f)(1) impose "a limit on injunctive relief," *Reno v. Am.-Arab Anti-Discrimination Comm.* (*AADC*), 525 U.S. 471, 481 (1999), one that disallows a court to restrain or enjoin the operation of §§ 1221–1232, which broadly regulate the inspection, apprehension, examination, exclusion, and removal of persons who are not authorized to be present within the United States. The third clause—which the Court

will refer to as the exceptions clause—permits a court to enjoin or restrain those statutes' application "to an *individual alien* against whom proceedings under such part have been initiated." § 1252(f)(1) (emphasis added).

Petitioners argue that their requests—for release, for bond hearings, and for an order directing Respondents to cease any new admissions of individuals into immigration confinement at EDC—would not enjoin or restrain the operation of any statutory provision within §§ 1221–1232. (Reply ISO Petition and P.I. at 5). Rather, they continue, such relief would prevent Respondents from violating or misapplying the relevant statutes and thus not run counter to § 1252(f)(1). (*Id.*). The argument appears misplaced.[3]

Petitioners and the putative class, as the government points out (and Petitioners do not contest), are detained pursuant to the mandatory detention provisions of §§ 1226(c) and 1231(a)(2) and the discretionary detention provisions of §§ 1225(b), 1226(a), and 1226(e). (*See* Opp. to Petition and P.I. at 26). And all of Petitioners' claims are based on the Constitution—that their otherwise statutorily lawful detention violates the Constitution because of the conditions of their confinement or because they were not provided bond hearings. As the Supreme Court stated in *Jennings v. Rodriguez*, 138 S. Ct. 830 (2018), the argument that a putative class is seeking not to enjoin the operation of the detention statutes but rather to enjoin conduct not authorized by those statutes "does not seem to apply to an order granting relief on constitutional grounds." *Id.* at 851.

Ordering Petitioners' release on constitutional grounds, it appears, would enjoin and restrict the operation of the statutes under which they are detained. As to the mandatory provisions,

---

[3]     By comparison, § 1252(f)(1) does not bar classwide declaratory relief for a violation of the *Accardi* doctrine. *See Alli v. Decker*, 650 F.3d 1007, 1013 (3d Cir. 2011) ("In sum, viewing the provision in context and then taking into consideration the heading of the provision, it is apparent that the jurisdictional limitations in § 1252(f)(1) do not encompass declaratory relief.").

ordering release or bond hearing would seemingly render the mandatory detention statutes constitutionally inoperative on a classwide basis.  As to the discretionary statutes, such relief might unduly constrict the Executive's statutorily delegated discretion.  The same would be true of ordering Respondents to cease any new admissions of individuals into immigration confinement at EDC because § 1231(g)(1), the Third Circuit has observed, implies that the Attorney General has discretion to direct the placement and transfer of detainees.  *See Calla-Collado v. Att'y Gen. of U.S.*, 663 F.3d 680, 685 (3d Cir. 2011); *Sinclair v. Att'y Gen. of U.S.*, 198 F. App'x 218, 222 n.3 (3d Cir. 2006).  And constricting that discretion on a classwide basis, as Petitioners urge, might run squarely into § 1252(f)(1).  *Cf. Jennings*, 138 S. Ct. at 841 (reaffirming that 8 U.S.C. § 1226(e), which limits review of certain discretionary judgments, did not prohibit a challenge to the *statutory framework* of § 1226, as opposed to its application, because the extent of the Government's detention authority is not a matter of discretionary judgment).

Petitioners argue that, even if what they request would enjoin the operation of detention provisions listed in §§ 1221–1232, the Court may grant the requested relief pursuant to § 1252(f)(1)'s exceptions clause.  (Reply ISO Petition and P.I. at 4).  The exceptions clause applies here, they say, because it permits a court to enjoin or restrain "the application of [§§ 1221–1232] to an *individual alien* against whom proceedings under such part have been initiated," § 1252(f)(1) (emphasis added), and because each member of the putative class *is* an "individual alien."  (*Id.*). Respondents counter that the exceptions clause's use of the modifier "individual" imposes a numerical limitation on "alien," thus requiring the Court to limit any injunction to the application of §§ 1221–1232 to a single noncitizen, as opposed to a class of noncitizens.  (Opp. to Petition and P.I. at 25–26).  Therefore, Respondents conclude, the exceptions clause does not permit a court to grant classwide injunctive relief.  (*Id.*).

The Supreme Court has agreed with Respondents' reading, explaining that § 1252(f)(1) does not permit a court to enter classwide injunction relief. *See Jennings*, 138 S. Ct. at 851 ("Section 1252(f)(1) thus 'prohibits federal courts from granting classwide injunctive relief against the operation of §§ 1221–123[2].'" (quoting *AADC*, 525 U.S. at 481)); *accord Nken v. Holder*, 556 U.S. 418, 431 (2009). Petitioners argue that the Supreme Court's statements on this issue are merely *dicta*. (Reply ISO Petition and P.I. at 4). Nevertheless, the Third Circuit also appears to have differentiated classwide declaratory and injunctive relief under § 1252(f)(1). *See Alli*, 650 F.3d at 1012–13. 1016; *Gayle v. Warden Monmouth Cnty.*, 838 F.3d 297, 305 n.9 (3d Cir. 2016). And the Sixth and Tenth Circuits, along with several other District Courts, have explicitly held that § 1252(f)(1) bars classwide injunctive relief. *See Hamama v. Adducci*, 912 F.3d 869, 877 (6th Cir. 2018), *cert. denied*, No. 19-294, 2020 WL 3578681 (U.S. July 2, 2020); *Van Dinh v. Reno*, 197 F.3d 427, 433 (10th Cir. 1999); *Vazquez Perez v. Decker*, No. 18-10683, 2019 WL 4784950, at *8 (S.D.N.Y. Sept. 30, 2019); *Pimentel v. Holder*, No. 10-6067, 2011 WL 1496756, at *2 (D.N.J. Apr. 18, 2011), *abrogated on other grounds by Alli*, 650 F.3d at 1012–13; *Belgrave v. Greene*, No. 00-1523, 2000 WL 35526417, at *4 (D. Colo. Dec. 5, 2000).

Petitioners rely on the Ninth Circuit case *Padilla v. ICE*, 953 F.3d 1134, 1149–51 (9th Cir. 2020), which held that § 1252(f)(1) permits classwide injunctive relief where, as here, removal proceedings have been initiated against each member of the class. (Reply ISO Petition and P.I. at 3). *Padilla* found that Congress used "the word 'individual' . . . to prohibit injunctive relief with respect to organizational plaintiffs." *Padilla*, 953 F.3d at 1150. But as used in § 1252(f)(1), the word "individual" is an adjective modifying the word "alien." Reading the term "individual" to distinguish between humans and organizations, as the Sixth Circuit has said of a similar argument, "does violence to the text of the statute." *Hamama*, 912 F.3d at 877; *accord Vazquez Perez*, 2019

WL 4784950, at *7.  As Judge Bade pointed out in her *Padilla* dissent, there is no such thing as "an organizational or artificial entity 'alien' . . . for purposes of the immigration statutes."  953 F.3d at 1154 (Bade, J., dissenting).  The *Padilla* majority did not argue otherwise.

There are other points in *Padilla* which the Court does not find persuasive, but the Court determines that it need not issue a definitive ruling on the § 1252(f)(1) issue.  While the section appears to preclude Petitioners' class claims for injunctive relief based on the record currently before the Court, the Court finds that Petitioners fail to meet their burden under Rule 23.  *Jordon v. Att'y Gen. of U.S.*, 424 F.3d 320, 325 (3d Cir. 2005) (explaining that a court may assume hypothetical jurisdiction of a "statutory provenance").[4]

## III.    Motion for Class Certification

Federal Rule of Civil Procedure 23 governs class certification.  To certify a class, the Court first must find under Rule 23(a) that the party seeking class certification has demonstrated four elements: (i) numerosity, (ii) commonality, (iii) typicality, and (iv) adequate representation.  Second, the Court must find that the party seeking class certification has shown that the proposed class satisfies one of three requirements listed in Rule 23(b).  Here, Petitioners rely on Rule 23(b)(2), which permits class certification if "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."  Because "Rule 23 does not set forth a mere pleading standard," and because class certification requires a "rigorous analysis" into requirements of Rule 23, *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350–51 (2011), the Court must look to the merits of Petitioners' class claims in determining whether to certify the class, *see*

---

[4]    Similarly, the Court does not reach Respondents' other jurisdictional and procedural challenges to Petitioners' claims.

*In re Hydrogen Peroxide Antitrust Litigation*, 552 F.3d 305, 317–18 (3d Cir. 2008), *as amended* (Jan. 16, 2009).

### A. Numerosity

Rule 23(a)(1) requires that "the class [be] so numerous that joinder of all members is impracticable." "[A]lthough '[n]o minimum number of plaintiffs is required to maintain a suit as a class action,' a plaintiff in this circuit can generally satisfy Rule 23(a)(1)'s numerosity requirement by establishing 'that the potential number of plaintiffs exceeds 40.'" *Mielo v. Steak 'n Shake Operations, Inc.*, 897 F.3d 467, 486 (3d Cir. 2018) (second alteration in original) (quoting *Stewart v. Abraham*, 275 F.3d 220, 226–27 (3d Cir. 2001)). Respondents do not dispute that the putative class meets the numerosity requirement. As of November 19, 2020, there were 128 detainees at EDC (D.E. No. 78-1, Declaration of Abelardo Montalvo, M.D., ¶ 6), making joinder impracticable. And immigration detainees are transient and are transferred in and out of detention centers on an irregular basis, thus "enhanc[ing] the desirability of using a plaintiff class." *Thakker v. Doll*, No. 20-0480, 2020 WL 5737507, at *3 (M.D. Pa. Sept. 24, 2020) (quoting *T.B. v. Sch. Dist. of Phila.*, No. 97-5453, 1997 WL 786448, at *2 (E.D. Pa. Dec. 1, 1997)). The putative class meets the numerosity requirement.

### B. Commonality

Rule 23(a)(2)'s commonality requirement demands that "there are questions of law or fact common to the class." This standard, the Third Circuit has said, "is not a high one," *Rodriguez v. National City Bank*, 726 F.3d 372, 382 (3d Cir. 2013), requiring only that "the named plaintiffs share at least one question of fact or law with the grievances of the prospective class," *id.* (quoting *Baby Neal ex rel. Kanter v. Casey*, 43 F.3d 48, 56 (3d Cir. 1994)). Although not a burdensome requirement, the common contention "must be of such a nature that it is capable of classwide

resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Dukes*, 564 U.S. at 350.

### i.   Substantive Due Process

Petitioners claim that their continued detention, during the ongoing COVID-19 pandemic, violates substantive due process.  (Amended Petition ¶¶ 137–45).  Their continued detention, they argue, constitutes unlawful punishment and evinces a deliberate indifference to their health and safety due to Respondents' alleged lack of response to the pandemic and the present conditions of their confinement at EDC.  (P.I. at 21–26).

Recently, the Third Circuit laid out the standards on which to assess whether a detention center's conditions constitute unlawful punishment or evince a deliberate indifference to a detainee's health and safety.  *See Hope v. Warden York Cty. Prison*, 972 F.3d 310, 326–331 (3d Cir. 2020).  As to unlawful punishment, the Third Circuit said, "[t]he touchstone . . . is whether conditions of confinement are meant to punish or are 'but an incident of some other legitimate governmental purpose.'"  *Id.* at 326 (quoting *Hubbard v. Taylor*, 538 F.3d 229, 232 (3d Cir. 2008)). A court must "consider the totality of the circumstances of confinement, including any genuine privations or hardship over an extended period of time, and whether conditions are (1) rationally related to their legitimate purpose or (2) excessive in relation to that purpose."  *Id.*  As to deliberate indifference, such a claim requires a claimant to "show [that] the Government knew of *and disregarded* an excessive risk to their health and safety."  *Id.* at 329.   When a deliberate indifference claim is brought by a detainee with a particular vulnerability, the Third Circuit has recognized that, "even if detention officials afford some care to the detainee, it still might not satisfy the Constitution's demands in every situation."  *Id.*  Mere disagreement with the response of the government is insufficient to establish a claim of deliberate indifference.  *Id.*

Both of Petitioners' substantive due process claims—unlawful punishment and deliberate indifference—require the Court to answer factual and legal questions that are common to the class. The Court must look to the present conditions at EDC, Respondents' response to the pandemic, and the reasons for holding Petitioners and the putative class members.  Thus, Petitioners appear to have met the relatively low bar of commonality for their substantive due process claim.[5]  *See Thakker*, 2020 WL 5737507, at *4 (finding that allegations of "inferior infection control procedures at each of the Facilities" raise questions common to a class of inmates).

### ii.    Procedural Due Process

Petitioners claim that they were denied procedural due process when ICE reviewed whether to release some inmates and completed that review on April 17, 2020, without providing Petitioners or the putative class members notice or an opportunity to be heard and without considering whether to release individuals detained pursuant to the mandatory detention provisions of 8 U.S.C. §§ 1226(c) and 1231(a)(2).  (P.I. at 27).

To succeed on a claim that the government violated procedural due process, the claimant must make two threshold showings.  First, the claimant must show a deprivation of a constitutionally protected liberty or property interest.  *See Sandin v. Conner*, 515 U.S. 472, 478

---

[5]     The Court notes that it appears that Petitioners have met the commonality requirement, but in light of the Supreme Court's decision in *Dukes*, the issue is not free from doubt.  As noted, the *Dukes* Court ruled that the common contention "must be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." 564 U.S. at 350.  The conditions of EDC certainly can be resolved on a classwide basis, and it is an issue that is central to each claim.  However, the "'personal nature of constitutional rights' is a 'cardinal principle[ ] of our constitutional order.'" *Hope*, 972 F.3d at 331 (quoting *New York v. Ferber*, 458 U.S. 747, 767 (1982)).  Thus, each Petitioner must show, on an individual basis, that his or her constitutional rights have been violated.  By definition, this individualized inquiry is not capable of resolution on a classwide basis.  Yet, the Court finds that this individualized issue is more appropriately analyzed under the typicality requirement.

The Court is aware that certain constitutional violations would seemingly not depend on an individualized inquiry.  Thus, for example, if a police department instituted a policy of unconstitutional searches and seizures, it would appear that such policy could be enjoined without further review.  But the same cannot be said of the constitutional allegations raised in this matter; an individualized review is necessary.

(1995); *Hernandez v. Gonzales*, 437 F.3d 341, 346 (3d Cir. 2006) ("But, like others, aliens must in the first instance possess a liberty or property interest.").   Second, the claimant must show that the government failed to follow certain procedures with which the Constitution or positive law required it to follow.  *See Mathews v. Eldridge*, 424 U.S. 319, 334–35 (1976).

Because Petitioners' claim is predicated on a policy and practice of ICE, the Court perceives at least two questions that are common to all class members.  The first is whether ICE's custody review procedures created a *de facto* liberty or property interest within the meaning of the Fifth Amendment's Due Process Clause.  The second is whether ICE was required to provide notice and an opportunity to be heard before deciding not to release Petitioners and the putative class members.  *See Rodriguez v. Marin*, 909 F.3d 252, 255 (9th Cir. 2018) ("Although due process is a 'flexible' concept, certainly no process at all may be a common characteristic of each of the statutes at issue."  (quoting *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972)).  Thus, Petitioners' procedural due process claim apparently meets the commonality requirement.[6]

### iii.   *Accardi*

Petitioners argue that Respondents are violating the *Accardi* principle because they have failed to implement guidelines for detention centers promulgated by the Centers for Disease Control and Prevention ("CDC").  (Amended Petition ¶¶ 157–67).  More specifically, Petitioners claim that CoreCivic, Inc., which operates EDC pursuant to a contract with ICE, is required to follow the detention standards set forth by ICE's 2011 Performance-Based National Detention Standards, as amended in 2016 ("2011 PBNDS").  (Amend. Habeas. Pet. ¶ 159).  They quote the warden of EDC, Orlando Rodriguez, that "EDC is required to comply with the [2011 PBNDS]." (Reply ISO Petition and P.I. at 19 (quoting Rodriguez Decl. ¶ 11)).  The 2011 PBNDS, according

---

[6]     Although the Court notes the same reservations as to this conclusion as discussed in note 5.

to Petitioners, requires contract detention centers, like EDC, to comply with CDC guidelines for the prevention and control of infectious and communicable diseases. (P.I. at 32–33). The 2011 PBNDS indicates that "[CDC] guidelines for the prevention and control of infectious and communicable diseases shall be followed." (Amended Petition ¶ 86 (quoting 2011 U.S. Immigration and Customs Enforcement, Performance-Based National Detention Standards (PBNDS 2011, Rev. 2016), https://bit.ly/3bwVoKE)).

The *Accardi* principle, named for its application in *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260 (1954), is the "long-settled principle that rules promulgated by a federal agency that regulate the rights and interests of others are controlling upon the agency." *Leslie v. Att'y Gen. of U.S.*, 611 F.3d 171, 175 (3d Cir. 2010). The *Accardi* principle applies "beyond formal regulations" and covers materials such as agency guidance or policy documents. *Alcaraz v. INS*, 384 F.3d 1150, 1162 (9th Cir. 2004). Such guidance and policy documents must at least create a "binding norm[]" on the agency. *Damus v. Nielsen*, 313 F. Supp. 3d 317, 336 (D.D.C. 2018) (first citing *Vitarelli v. Seaton*, 359 U.S. 535, 539–40 (1959); and then citing *Service v. Dulles*, 354 U.S. 363, 372 (1957)).

Against that legal and factual backdrop, the Court finds that there are at least three questions that are common to all class members. The first is whether the 2011 PBNDS is binding on contract detention centers. The second is whether the 2011 PBNDS makes CDC guidelines binding on contract detention centers. The third is whether EDC is noncompliant with CDC guidelines.[7] Therefore, Petitioners' *Accardi* claim meets Rule 23(a)(2)'s commonality requirement.

---

[7] The Court recognizes that a negative answer to the first or second question will apparently obviate the need for additional analysis. For example, if the 2011 PBNDS is not binding on contract detention centers, then this answer may be dispositive of the two remaining inquiries.

### C. Typicality

Rule 23(a)(3)'s typically requirement demands that "the claims or defenses of the representative parties are typical of the claims or defenses of the class."  The typicality requirement looks to whether "the class representatives are sufficiently similar to the rest of the class—in terms of their legal claims, factual circumstances, and stake in the litigation—so that certifying those individuals to represent the class will be fair to the rest of the proposed class."  *In re Schering Plough Corp. ERISA Litig.*, 589 F.3d 585, 597 (3d Cir. 2009).  This requirement exists because "[e]nsuring that absent class members will be fairly protected requires the claims and defenses of the representative to be sufficiently similar not just in terms of their legal form, but also in terms of their factual basis and support."  *Id.* at 598.  "Complete factual similarity is not required; just enough factual similarity so that maintaining the class action is reasonably economical and the interests of the other class members will be fairly and adequately protected in their absence."  *Id.*

### i.  Substantive Due Process

Although there are common questions with respect to Petitioners' substantive due process claims, the Court finds that Petitioners' claims are not typical of all class members.  To remedy the due process violations, Petitioners seek their and all putative class members release.  The Third Circuit recently explained that such relief requires a finding of irreparable harm, a balancing of the harms, and an assessment of the public interest; before the Court can make those findings in this context, the Court must engage in an individualized analysis, looking at "several factors" relevant to each petitioner, such as "their *own unique* medical histories, medical risks, healthcare access needs, detention conditions, and release circumstances."  *Hope*, 972 F.3d at 331 (emphasis added).  Such relief also requires an assessment of the individual's "criminal history and risk of flight."  *Id.* at 332.

In *Hope*, the Third Circuit reviewed a district court's decision to release numerous civil immigration detainees due to conditions of confinement. The Circuit first reviewed the proper analysis that a court must undertake in deciding an unconstitutional conditions of confinement claim. *Id.* at 325–29. The court in *Hope* also observed that the "'personal nature of constitutional rights' is a 'cardinal principle[ ] of our constitutional order.'" *Id.* at 331 (quoting *Ferber*, 458 U.S. at 767). The Circuit continued:

> Yet a fundamental problem pervades the District Court's analysis: it treated Petitioners as a unit instead of as individuals with their own unique medical histories, medical risks, healthcare access needs, detention conditions, and release circumstances. *It should have assessed all of these factors for each Petitioner to determine whether they would suffer more harm in detention than if released.*

*Id.* (emphasis added). The *Hope* court explained that "release circumstances" required a court to assess the facility's conditions of confinement with those of the community to which a detainee sought to be released, including the prevalence of the virus in the home communities, living conditions, and access to healthcare. *Id.* The Circuit continued that a judge must also analyze a released detainee's ability to quarantine and assess the potential risk that a detainee "might spread COVID-19 when released into the public." *Id.* at 332. The court in *Hope* further instructed lower courts to consider a detainee's potential harm to the public if released in light of a detainee's criminal history. *Id.* at 332–33.

In light of this mandated individualized inquiry, the Court finds that typicality is not met. In fact, the Court is aware of several factual differences amongst the named Petitioners with respect to their individual medical conditions. While Rizza Jane G.A., Héctor G.M., and Bob L.N. suffer from *some* medical condition (D.E. No. 2-1, Declaration of Rizza Jane G.A. ("Rizza Decl.") ¶¶ 27–28; D.E. No. 2-3, Declaration of Héctor G.M. ("Héctor Decl.") ¶ 16; D.E. No. 54-8, Declaration of Kate Sugarman, M.D., Regarding Bob L.N. ("Sugarman Decl."), at 3-4), those

conditions range in severity.  Héctor G.M. suffers from asthma (Héctor Decl. ¶ 16) and Bob L.N.

suffers from hypertension (Sugarman Decl., at 3–4)—conditions that *may* place individuals who

contract COVID-19 at an increased risk of dire consequences; meanwhile, Rizza Jane G.A. suffers

from a condition that requires her to avoid certain food (Rizza Decl. ¶¶ 27–28).  Moreover, Albert

A.B., Camilo S.H., and Muhamed I.-S. do not allege that they suffer from any medical conditions

at all.  These differences require individualized treatment and render maintaining a class not

reasonably economical.  *See Thakker*, 2020 WL 5737507, at *5–6 (typicality not present in case

alleging deprivation of substantive due process where each petitioner suffered from different

medical histories and had different criminal histories).

For the same reasons, the Court cannot find that Petitioners have met the typicality

requirement to pursue an injunction prohibiting Respondents from accepting new inmates in EDC.

Such an injunction similarly requires a finding of irreparable harm, a balancing of the harms, and

an assessment of the public interest—those findings are necessarily fact-intensive when the alleged

harm is that individuals in EDC may contract COVID-19 and suffer dire consequences.  *Hope*,

972 F.3d at 331 (explaining that "in assessing irreparable harm, the Court should have considered

several factors for each individual").

Petitioners do not meet the typicality requirement to advance their substantive due process

claim.

### ii.    Procedural Due Process

The Court similarly finds that Petitioners have not met the typicality requirement to

advance their procedural due process claim.  That is because not all "aliens" are entitled to more

process under the Due Process Clause than that which the government confers upon them.  *See*

*U.S. Dep't of Homeland Sec. v. Thuraissigiam*, 140 S. Ct. 1959, 1982–83 (2020).    In

*Thuraissigiam*, the Supreme Court observed that "aliens" detained shortly after entering the country, and who cannot be said to have effected an entry, are not entitled to more process than that which the government affords them as a matter of grace. *Id.* at 1983. Those persons, the Court said, "ha[ve] only those rights regarding admission that Congress has provided by statute." *Id.*; *see also Castro v. U.S. Dep't of Homeland Sec.*, 835 F.3d 422, 448 (3d Cir. 2016) (explaining, pre-*Thuraissigiam*, that Supreme Court precedent "call[s] into serious question the proposition that even the slightest entrance into this country triggers constitutional protections that are otherwise unavailable to the alien outside its borders"); *D.A.M. v. Barr*, No. 20-1321, 2020 WL 4218003, at *10 (D.D.C. July 23, 2020) (explaining that, while "aliens" are entitled to substantive due process during their deportations, not all are entitled to more procedural protections than that which Congress affords them). Therefore, for some individuals in the putative class, the only process to which they were entitled to was what ICE gave them—an *ex parte* consideration whether to release them. Others who effected an entry into the United States are apparently entitled to more process. But determining who falls into which camp will require an individualized analysis. *Cf. German Santos v. Warden Pike County Correctional Facility*, 965 F.3d 203, 206 (3d Cir. 2020) (finding, as to a detainee being held pursuant to 8 U.S.C. § 1226(c), that detention for more than two-and-a-half years was unreasonable so that the petitioner had a due process right to a bond hearing); *Guerrero-Sanchez v. Warden York Cnty. Prison*, 905 F.3d 208, 224 (3d Cir. 2018) ("[A]n alien facing prolonged detention under [8 U.S.C. § 1231(a)(6)] is entitled to a bond hearing before an immigration judge and is entitled to be released from detention unless the government establishes that the alien poses a risk of flight or a danger to the community." (quoting *Diouf v. Napolitano*, 634 F.3d 1081, 1092 (9th Cir. 2011)).

Just as Petitioners differ with respect to their medical and criminal histories, Petitioners differ with respect to their statuses in the United States. Rizza Jane G.A. entered the United States in October 2014 through a J-1 work-and-study visa program based in Texas. (Rizza Decl. ¶ 4). Her program sponsor, however, "subjected [her] to exploitative working conditions that made it impossible to meet the eligibility requirements to renew [her] visa when the time came." (*Id.*). Thus, it appears she effected an entry in the United States. The same is true of Camilo S.H., who was arrested by ICE on March 5, 2020, during a home visit, ostensibly conducted far past the border (D.E. No. 43-19, Form I-213 of Camilo S.H., at 2); and Héctor G.M., who was arrested by U.S. Border Patrol agents near Tuscan, Arizona (D.E. No. 43-12, Form I-213 of Héctor G.M., at 2). In comparison, Albert A.B. and Bob L.N. were arrested in airports after coming off flights from foreign countries. (D.E. No. 43-9, Form I-213 of Albert A.B., at 2; D.E. No. 43-16, Form I-213 of Bob L.N., at 2). The record does not indicate precisely the status of Muhammad I.-S., who, on November 20, 2018, was apprehended by a U.S. Border Patrol agent in California just one mile north of the United States border. (D.E. No. 43-20, Form I-213 of Muhammad I.-S., at 2).

Finally, to the extent Petitioners argue that the wholesale denial of bond hearings to those detained pursuant to the mandatory detention provisions of 8 U.S.C. §§ 1226(c) and 1231(a)(2) violates procedural due process, the Court notes that *Demore v. Kim*, 538 U.S. 510 (2003), upheld § 1226(c) as facially constitutional. *Id.* at 531; *Tracey M.S. v. Decker*, No. 20-5146, 2020 WL 2316559, at *4 (D.N.J. May 11, 2020). The Court perceives no reason why § 1231(a)(2) would not also survive such a facial challenge, and Petitioners do not appear to argue it would not. To the extent Petitioners raise an as-applied challenge to §§ 1226(c) and 1231(a)(2), such a challenge requires a fact-intensive inquiry into the reasonableness of detention, taking into account the length of detention *coupled with* the petitioner's unique medical conditions and history. *See Tracey M.S.*,

2020 WL 2316559, at *7 ("Thus, given the unique procedural posture of Petitioner's immigration proceedings, coupled with inevitable immigration court delays and Petitioner's underlying health conditions in the shadow of the COVID-19 pandemic, the Court finds that Petitioner's detention has become unreasonably prolonged such that due process requires that Petitioner be afforded an individualized bond hearing before an immigration judge.").

Petitioners, therefore, do not meet the typicality requirement to advance their procedural due process claim.

### iii.    *Accardi*

The Court reaches a different conclusion with respect to Petitioners' *Accardi* claim.  The central focus of the *Accardi* claim is on the conduct of Respondents and whether they are required follow CDC guidelines but failed to do so.  There are additional questions with which the Court must grapple in order to find that Respondents are violating the *Accardi* principle, as discussed below.  But those outstanding questions do not affect the typicality requirement of class certification because the answer to those questions do not require an individualized analysis of Petitioners and the putative class members.  Although in some instances a claimant must show prejudice to obtain relief under *Accardi*, that requirement applies in instances where, unlike here, a plaintiff is seeking to invalidate some agency action that is being taken against him or her.  *Leslie*, 611 F.3d at 177.  The Court is unaware of any instance in which a court has applied that requirement to a claimant seeking a declaratory judgment.  Thus, Petitioners—all of whom were detained at EDC at least at some point during the period that Respondents were allegedly violating the *Accardi* principle—are in sufficiently similar positions to the rest of the class in both legal form and factual basis to support that claim.

### D. Adequate Representation

Rule 23(a)(4)'s adequacy requirement demands that "the representative parties will fairly and adequately protect the interests of the class."  The adequacy requirement "serves to uncover conflicts of interest between named parties and the class they seek to represent."  *In re Pet Food Prods. Liab. Litig.*, 629 F.3d 333, 343 (3d Cir. 2010) (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997)).  In assessing this requirement, a court should determine (i) whether "the putative named plaintiff has the ability and the incentive to represent the claims of the class vigorously," and (ii) whether "there is [a] conflict between the individual's claims and those asserted on behalf of the class."  *In re Cmty. Bank of N. Va.*, 622 F.3d 275, 291 (3d Cir. 2010), *as amended* (Oct. 20, 2010) (quoting *Hassine v. Jeffes*, 846 F.2d 169, 179 (3d Cir. 1988)).  The proposed class representatives cannot have divergent interests from the putative class members, and there can be no conflicts of interest.  *Id.*  "There are clear similarities between the components of the typicality inquiry relating to the absence of unique defenses and alignment of interests . . . ."  *In re Schering Plough Corp. ERISA Litig.*, 589 F.3d at 602.  "Because of the similarity of [the typicality and adequacy] inquiries, certain questions—like whether a unique defense should defeat class certification—are relevant under both."  *Id.* (quoting *Beck v. Maximus, Inc.*, 457 F.3d 291, 296 (3d Cir. 2006)).

For the same reasons the Court cannot find typicality with respect to the substantive and procedural due process claims, the Court cannot find that Petitioners are adequate class representatives for those claims.  That is because some of the Petitioners will be subject to different defenses than many of the putative class members and may want to rely on different legal theories to obtain relief.

However, the Court does not reach the same conclusion as to the *Accardi* claim.  That claim, as noted, will not depend on any material factual differences between Petitioners and the putative class members.  Respondents do not argue otherwise.

Instead, Respondents argue that, because Rizza Jane G.A., Albert A.B., and Héctor G.M. have been released from custody, they are inadequate class representatives because they lack an interest in vigorously litigating this case.  (Opp. to Class Cert. at 24).  But Petitioners provide a supplemental affidavit of Rizza Jane G.A. indicating that she still wishes to litigate this case as a class representative on behalf of the putative class despite her release from detention.  (D.E. No. 40-4, Supplemental Declaration of Rizza Jane G.A. ¶ 2).  And the initial affidavits of each of the proposed class representatives, including those who were released from EDC, indicate that they have motivations to represent the putative class beyond their own individual interests in securing their release and asserting their individual rights.  (Rizza Decl. ¶¶ 33 & 40; D.E. No. 2-2, Declaration of Albert A.B. ¶¶ 22 & 29; D.E. No. 2-3, Héctor Decl. ¶¶ 28 & 35; D.E. No. 2-4, Declaration of Bob L.N. ¶¶ 28 & 35; D.E. No. 35-1, Declaration of Camilo S.H. ¶¶ 34 & 41; D.E. No. 35-2, Declaration of Muhammad I.-S. ¶¶ 29 & 36).  The Court perceives no issue with Petitioners' incentive and motivation to vigorously litigate this matter.  Nor does the Court perceive there will be any conflict between Petitioners and the putative class members as they pursue the *Accardi* claim.

Similarly, Respondents argue that Rizza Jane G.A., Albert A.B., and Héctor G.M. cannot serve as class representatives because their claims are moot as they have been released from detention.  (Opp. to Class Cert. at 24).  The Court disagrees.  For starters, at least two of Petitioners have live claims, and "in most cases as long as one of the representatives is adequate, the adequacy of representation requirement is met."  *Grasty v. Amalgamated Clothing & Textile Workers Union,*

*AFL-CIO, CLC*, 828 F.2d 123, 128 (3d Cir. 1987).  Moreover, a common exception to class-action mootness is the "relation-back doctrine," which holds that a ruling on class certification relates back to the date that the class plaintiffs filed their motion for class certification.  *See Lusardi v. Xerox Corp.*, 975 F.2d 964, 976 (3d Cir. 1992).  The Third Circuit has applied the "relation-back doctrine [to] successive, substantially similar motions to certify."  *Gayle*, 838 F.3d at 307.  Here, each member of the class had a live individual claim at the time they filed their initial motion for class certification on May 15, 2020.  Although the Court is now deciding Petitioners' *amended* motion for class certification, which was filed on May 29, 2020, *after* the three individuals listed above were released from detention, the initial and amended motions are substantially similar. They differ only in that the amended motion for class certification "incorporate[d] facts pertaining to the new named Plaintiffs, [Camilo S.H. and Muhammad I.-S.], as well as the declaration of class counsel, Michael P. Daly."  (D.E. No. 36-1, Notice of Amended Motion for Class Certification, at 2).  Thus, the Court finds that the relation-back exception to class action mootness applies and that Petitioners are adequate class representatives to advance the *Accardi* claim.

### E.  Rule 23(b)(2)

For a class to be certified under Rule 23(b)(2), "the party opposing the class [must have] acted or refused to [have] act[ed] on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." The purpose of Rule 23(b)(2) is to "remedy[] systemic violations of basic rights of large and often amorphous classes."  *Baby Neal*, 43 F.3d at 64.  "While 23(b)(2) class actions have no predominance or superiority requirements, it is well established that the class claims must be cohesive."  *Barnes v. Am. Tobacco Co.*, 161 F.3d 127, 143 (3d Cir. 1998).  Cohesiveness means that the class's claims are common and will not require individual proof from each class member

to establish a violation of the law. *See Gates v. Rohm & Haas Co.*, 655 F.3d 255, 264 (3d Cir. 2011). "Rule 23(b)(2) applies only when a single injunction or declaratory judgment would provide relief to each member of the class. It does not authorize class certification when each individual class member would be entitled to a *different* injunction or declaratory judgment against the defendant." *Dukes*, 564 U.S. at 360. "The key to the (b)(2) class is the indivisible nature of the injunctive or declaratory remedy warranted—the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them." *Id.* (internal quotation marks omitted).

Again, Petitioners' substantive and procedural due process claims are not cohesive and do not meet the requirements of Rule 23(b)(2). Before granting relief, the Court must engage in an individualized analysis of each class member. The Court cannot release individuals into the general population without knowing their criminal histories, without knowing their release plan, and without knowing their medical histories. *Hope*, 972 F.3d at 331–32. Nor can the Court enjoin Respondents from permitting new inmates in EDC because such an injunction also requires individualized fact-finding. Finally, the Court cannot order bond hearings for each class member without knowing whether such persons effected an entry into the United States and are thus entitled to procedural due process, or without knowing their particular medical conditions, which the Court needs in order to assess whether the application of the mandatory detention provisions is unreasonable. "[I]ndividual issues pervade this case," and "it would be unjust to bind absent class members to a decision that may not consider their personal circumstances." *Thakker*, 2020 WL 5737507, at *10

The same is not true of the *Accardi* claim. To obtain a declaration that Respondents are violating the *Accardi* principle, Petitioners will not have to submit individual proof. Petitioners'

*Accardi* claim rests on Respondents' alleged failure to follow binding CDC guidelines and not on the particular situation of any individual class member.  If Respondents are violating the *Accardi* principle against one, they are violating the *Accardi* principle against all.  If not against one, then none.  And an order declaring such a violation would apply generally and equally benefit the class.[8]

### F.   Rule 23(g)

Rule 23(g) requires the Court to appoint class counsel, and it requires the Court to consider

> (i) the work counsel has done in identifying or investigating potential claims in the action;
> (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;
> (iii) counsel's knowledge of the applicable law; and
> (iv) the resources that counsel will commit to representing the class.

Fed. R. Civ. P. 23(g)(A)(i)–(iv).  Respondents do not challenge the adequacy of putative class counsel—Lauren Major, Alina Das, Leila Kang, and Michael P. Daly.  And the Court finds that counsel have put in considerable work in identifying and investigating potential claims, have extensive experience in immigration law, constitutional law, and complex litigation, and have the necessary resources to litigate this class action.  (*See* D.E. Nos. 2-20, Declaration of Lauren Major, American Friends Service Committee; 2-21, Declaration of Alina Das, NYU School of Law Immigrant Rights Clinic; 2-22, Declaration of Leila Kang, Immigrant Defense Project; & 17-1,

---

[8]       In *Jennings*, 138 S. Ct. 830, the Supreme Court raised the question whether declaratory relief, without injunctive relief, could sustain a Rule 23(b)(2) class on its own. *Id.* at 851 (emphasizing that Rule 23(b)(2) refers to "injunctive relief or *corresponding* declaratory relief").  The Third Circuit does not appear to have addressed this question.  The Court does not perceive it to present an issue for this class.  Rule 23(b)(2) "does not require that both forms of relief be sought and a class action seeking solely declaratory relief may be certified under subdivision (b)(2)." 7AA Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice & Procedure, Civil 3D § 1175 (2008); *accord Bond v. Liberty Ins. Corp.*, No. 15-4236, 2017 WL 1628956, at *8 (W.D. Mo. May 1, 2017); *In re United Artists Theatre Co.*, 410 B.R. 385, 396 n.5 (Bankr. D. Del. 2009).  As Justice Breyer accurately pointed out dissenting in *Jennings*, "the Advisory Committee says that declaratory relief can fall within the Rule's term 'corresponding' if it 'serves as a basis for later injunctive relief.'" *Id.* at 876 (Breyer, J., dissenting) (quoting Notes on Rule 23(b)(2)–1966 Amendment, 28 U.S.C. App., p. 812).  The Court has no reason to believe that a declaration that Respondents are violating the *Accardi* principle could not later be used by an individual class member in an effort to obtain injunctive relief.

Declaration of Michael P. Daly, Faegre Drinker).  As such, the Court finds that Petitioners' counsel are more than adequate and meet the requirements of Rule 23(g).

In sum, the Court will certify the putative class only to advance the *Accardi* claim.  The class will consist of

> All individuals who, between commencement of this action and the entry of final judgment, are or have been held in civil immigration detention at EDC.

The Court appoints Petitioners Rizza Jane G.A., Albert A.B., Héctor G.M., Bob L.N., Camilo S.H., and Muhamed I.-S. as class representatives, and appoints Lauren Major, Alina Das, Leila Kang, and Michael P. Daly as class counsel.

## IV.    Merits

Ordinarily in a habeas action such as this one, the Court would assess the merits of Petitioners' class claim and their remaining individual claims.  But it cannot do so here for several reasons.  Their remaining class claim—the *Accardi* claim—received little attention in the briefing, and the Court needs additional information from the parties on several key issues before it can reach a sound determination.

First, little briefing has been dedicated to the question whether the 2011 PBNDS creates a binding norm on contract detention centers such that EDC must follow CDC guidelines.  The basis of Petitioners' claim is that Warden Rodriguez attested that "EDC is required to comply with the [2011 PBNDS]," (Reply ISO Petition and P.I. at 19 (citing Rodriguez Decl. ¶ 11)), and a single sentence in the 400-page 2011 PBNDS that says that "[CDC] guidelines for the prevention and control of infectious and communicable diseases *shall* be followed" (P.I. at 32 (citing 2011 PBNDS § 4.3(II)(10)) (emphasis added)).  Whether those two statements are sufficient to create a binding norm on contract detention centers is unclear.  Courts have reached varying conclusions

on the question whether the 2011 PBNDS can give rise to an *Accardi* claim, but without grappling

with the precise issue here—whether the 2011 PBNDS creates a binding norm on the agency.

*Compare A.S.M. v. Warden, Stewart Cnty. Det. Ctr.*, No. 20-62, 2020 WL 2988307, at *8 (M.D.

Ga. June 3, 2020) ("But the mere voluntary decision to try to operate its detention facilities

consistent with the best available practices, as evidenced by the CDC Guidance, does not subject

Respondents to an *Accardi* conditions of confinement claim."), *with Gayle v. Meade*, No. 20-

21553, 2020 WL 2086482, at *6 (S.D. Fla. Apr. 30, 2020), *ord. clarified*, No. 20-21553, 2020 WL

2203576 (S.D. Fla. May 2, 2020) ("It is abundantly clear that ICE is required to comply with

CDC's guidelines pursuant to its own regulations and policy statements."), *and Torres v. U.S.*

*Dep't of Homeland Sec.*, 411 F. Supp. 3d 1036, 1068 (C.D. Cal. 2019) (applying *Accardi* to failure

to enforce the 2011 PBNDS), *and Innovation Law Lab v. Nielsen*, 342 F. Supp. 3d 1067, 1079 (D.

Or. 2018) (holding that the plaintiffs demonstrated a likelihood of success on their APA claim that

defendants failed to follow the 2011 PBNDS).  The Court could not find Supreme Court or Third

Circuit precedent indicating what exactly a "binding norm" is or how a court should analyze

whether agency guidance creates such.  The D.C. Circuit appears to call for a rather rigorous

analysis:

> In determining whether an agency's statements constitute "binding
> norms," we traditionally look to the present effect of the agency's
> pronouncements.  Statements that are merely prospective, imposing
> no rights or obligations on the respective parties, will not be treated
> as binding norms.  *American Bus Ass'n v. U.S.*, 627 F.2d 525, 529
> (D.C. Cir. 1980).  We also examine whether the agency's statements
> leave the agency free to exercise its discretion.  Pronouncements that
> impose no significant restraints on the agency's discretion are not
> regarded as binding norms.   As a general rule, an agency
> pronouncement is transformed into a binding norm if so intended by
> the agency.  *Doe v. Hampton*, 566 F.2d 265, 281–82 (D.C. Cir.
> 1977), and agency intent, in turn, is "ascertained by an examination
> of the statement's language, the context, and any available extrinsic
> evidence."  *Id.* at 281.

*Padula v. Webster*, 822 F.2d 97, 100 (D.C. Cir. 1987).

Second, little has been dedicated to the question of whether EDC is not, in fact, compliant with CDC guidelines.  As Respondents point out, CDC guidelines appear to build in some flexibility for detention centers.  (Opp. to Petition and P.I. at 40).  But it is not clear whether conditions at EDC have transcended the apparent discretion granted by CDC guidelines, and it is not the Court's responsibility to comb the record to find evidence supporting the parties' possible positions.  *See Doeblers' Pa. Hybrids, Inc. v. Doebler*, 442 F.3d 812, 820 n.8 (3d Cir. 2006), *as amended* (May 5, 2006).

Third, while Petitioners have couched the *Accardi* claim in due process, neither party has addressed whether Petitioners have made, or need to make, the threshold showing ordinarily required for a such a claim, that is, a deprivation of a constitutionally protected liberty or property interest.  *See Sandin v. Conner*, 515 U.S. 472, 478 (1995).  It could be that they need not do so, and that *Accardi* is *sui generis* for that reason.  But if so, the Court still needs to understand the reasoning in support of such a position.  *But see United States v. Caceres*, 440 U.S. 741, 749 (1979) ("A court's duty to enforce an agency regulation is most evident when compliance with the regulation is mandated by the Constitution or federal law."); *id.* at 752–53 ("Nor is this a case in which the Due Process Clause is implicated because an individual has reasonably relied on agency regulations promulgated for his guidance or benefit and has suffered substantially because of their violation by the agency.").

Fourth, it is unclear whether this claim is more appropriately one under the Administrative Procedure Act ("APA").  While the parties agree that the *Accardi* principle is based on due process, case law is not as clear.  *See id.* at 754 ("[S]ome of our most important decisions holding agencies bound by their regulations have been in cases originally brought under the APA."); *Bd. of Curators*

*of the Univ. of Mo. v. Horowitz*, 435 U.S. 78, 92 n.6 (1978) (declining to apply the *Accardi* principle to the States); *United States v. Nixon*, 418 U.S. 683, 695 (1974) (applying the *Accardi* principle to order President Nixon to comply with the subpoena of the Special Prosecutor to turn over his secret tapes); *compare Marshall v. Lansing*, 839 F.2d 933, 943 (3d Cir. 1988) ("[P]rinciples of due process require an agency to follow its own regulations, which have the force of law."), *with Lojeski v. Boandl*, 788 F.2d 196, 199 (3d Cir. 1986) ("The[ *Accardi*] cases provide ample guidance to courts asked to reverse 'tainted' agency actions, but do not enunciate constitutional principles to take the courts beyond the realm of administrative law.").  If this matter is more appropriately couched in terms of the APA, then it is also unclear whether there is a reviewable "final agency action," 5 U.S.C. § 704, and whether such is even reviewable under § 2241.

Fifth, it is unclear whether, and to what extent, *Accardi* applies to substantive regulations. Respondents argue that it does not.  (*See* Opp. to Amend. Habeas Pet. at 37–38).  And at least one court has adopted that view.  *See C.G.B. v. Wolf*, No. 20-1072, 2020 WL 2935111, at *34 (D.D.C. June 2, 2020) (rejecting *Accardi* claim based on failure to implement CDC guidelines in ICE detention center because "agency regulations do not create *substantive* due process rights"). Although Petitioners have not offered a persuasive reason why Respondents are incorrect, Respondents' argument seems to ignore *Arizona Grocery Co. v. Atchison, T. & S. F. Ry. Co.*, 284 U.S. 370 (1932), a case where the Supreme Court applied the *Accardi* principle (before it was called the *Accardi* principle) to a substantive regulation.  *Id.* at 386, 389.  Although "all subsequent decisions of the Supreme Court that reference the *Accardi* principle . . . involve[d] procedural as opposed to substantive regulations," Thomas W. Merrill, *The Accardi Principle*, 74 Geo. Wash. L. Rev. 569, 577 (2006), the Supreme Court has never overturned *Arizona Grocery*, so the Court

cannot ignore it, *see State Oil Co. v. Khan*, 522 U.S. 3, 20 (1997) ("The Court of Appeals was correct in applying that principle despite disagreement with *Albrecht[ v. Herald Co.*, 390 U.S. 145 (1968)], for it is this Court's prerogative alone to overrule one of its precedents."); *Rodriguez de Quijas v. Shearson/Am. Express, Inc.*, 490 U.S. 477, 484 (1989) ("If a precedent of this Court has direct application in a case, yet appears to rest on reasons rejected in some other line of decisions, the Court of Appeals should follow the case which directly controls, leaving to this Court the prerogative of overruling its own decisions."). Thus, a key question here is whether, and to what extent, *Arizona Grocery* applies in this case.

Sixth and finally, there might be reason for the Court not to hold Respondents to strict adherence to CDC guidelines during the ongoing COVID-19 pandemic. For example, in *Caceres*, 440 U.S. 741, the Supreme Court expressed concern for mandating strict adherence to an IRS manual requiring its agents to obtain approval from the Department Justice prior to tape recording suspects: "[S]ince the content, and indeed the existence, of the regulations would remain within the Executive's sole authority, the result might well be fewer and less protective regulations." *Id.* at 756. "In the long run," the Court said, "it is far better to have rules like those contained in the IRS Manual, and to tolerate occasional erroneous administration of the kind displayed by this record, than either to have no rules except those mandated by statute, or to have them framed in a mere precatory form." *Id.* If ICE made CDC guidelines binding on contract detention centers through the 2011 PBNDS, then that was an apparently voluntary decision that ICE could arguably retract.

In light of these issues, supplemental briefing is necessary with respect to Petitioners' *Accardi* claim.

As to Petitioner's individual claims, those claims, too, were not sufficiently briefed. Although Petitioners formally asked for individual relief, they did not pursue their due process claims with the requisite degree of individuality, a requirement that was outlined above. Notably, after Petitioners added two class representatives to this case, they did not amend their briefing to advance those class representatives' individual interests. Significantly, one of those class representatives—Muhammad I.-S.—is one of the two individuals who, the Court can say with confidence, continues to have a live claim. If Petitioners wish to advance their due process claims as individuals, they must file their petitions separately per Chief Judge Wolfson's Standing Order 2020-10. (*See* D.E. No. 6). Although the Court previously said it would handle this matter for all purposes (D.E. No. 13), the Court's decision denying class certification of Petitioners' substantive and procedural due process claims changes the landscape. The Court therefore denies Petitioners' motion for individual preliminary injunctive relief and individual habeas corpus relief without prejudice to file for such relief consistent with Chief Judge Wolfson's Standing Order 2020-10.

## V.   Conclusion

Based on the foregoing, Petitioners' motion for class certification is GRANTED IN PART and DENIED IN PART, and their amended habeas petition and motion for a preliminary injunction are DENIED IN PART without prejudice to the individual Petitioners to file separate habeas petitions to advance their due process claims. The Court orders the parties to file supplemental briefing addressing the issues discussed above. An appropriate Order accompanies this Opinion.

Dated: November 23, 2020                    */s/Esther Salas*
                                             **Esther Salas, U.S.D.J.**